## Case No. 14,088.

### TOMPKINS v. GAGE et al.

[5 Blatchf. 268; 2 Fish. Pat. Cas. 577.] [1]

Circuit Court, N. D. New York. Oct. 26, 1865.

PATENTS—SPECIFICATIONS—DOUBLE CLAIM—IDENTITY — STATE OF THE ART — WANT OF NOVELTY AS DEFENCE.

1. Where one claim in a patent claimed a combination of three mechanisms, and another claim in the same patent described and claimed the particular manner in which the three mechanisms were combined and made effective in producing the particular result, *held*, that the two claims claimed the same invention.

[Cited in Dudley E. Jones Co. v. Munger Imp. Cotton Mach. Manuf'g Co., 1 C. C. A. 158, 49 Fed. 65.]
[Cited in Burke v. Partridge, 58 N. H. 352.]

2. There being no evidence that the double claim was made with an intention to mislead, the patent was not void because of such double claim.

3. A defence of want of novelty in the invention, in a suit on a patent, must be made out by satisfactory and preponderating evidence. It is not enough, to raise a doubt on the question.

[Cited in Jordan v. Dobson, Case No. 7,519.]

4. A claim construed in the light of the preceding and descriptive parts of the specification.

[Cited in Johnson v. McCabe, 37 Ind. 539.]

5. The introduction of a mechanical equivalent, held not to relieve from the charge of infringement.

6. In construing a specification as against an objection that it points out no means by which a particular arrangement can be made to operate successfully, where a mechanical equivalent is introduced in place of one feature, the specification must be read in view of the preceding state of the art immediately connected with the particular subject matter.

7. Disapprobation expressed by the court, as to the loose manner in which the specifications of patents are very often drawn up.

[This was a bill in equity, filed to restrain the defendants [George Gage and George C. Gage] from infringing two letters patent for "improvements in rotary knitting machines," one granted to Daniel Tainter, November 30, 1852 [No. 9,435], and assigned to complainant, and the other granted to Clark Tompkins and John Johnson, September 18, 1855 [No.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 5 Blatchf. 268, and the statement is from 2 Fish. Pat. Cas. 577.]

13,586], reissued May 15, 1860 [No. 963], and assigned to complainant. The claims of these several patents were as follows:

[Patent to Daniel Tainter: "I do not claim the combining one or more draft rollers and a take-up roller or drum in one frame, which, when put in rotation, shall carry them simultaneously around with it, so as to draw forward and wind up a rope or cord, or like manufacture, formed of strands twisted together; nor do I claim the application of a take-up roller or mechanism, as used on either a common warp or flat-braid knitting machine. What I claim as my invention is to so combine a draft and take-up roller, and mechanism for revolving it, with a rotary series or set of needles and other mechanism of the above-mentioned peculiar kind for knitting, that such draft roller shall rotate simultaneously or with the same velocity with such series of needles, so as to prevent the longitudinal rows of stitches from being produced in helical lines, and the evil consequences resulting to the fabric therefrom. I also claim the arrangement of the draft and take-up mechanism, in connection with the knitting mechanism, supported by two separate frames, A, T, and also their connection with the mechanism for producing an equal and simultaneous rotation of these frames, A, T, all substantially as described, whereby there shall not only be no connection between the frames, A, T, to extend through the fabric, but no projection from the frame, A, to come in contact with the presser, stitch wheels and cam bar, or their respective supports, during the simultaneous and equal rotations of both or either of the said frames, A, T."

[Original patent to Tompkins and Johnson: "We claim: First. The manner in which we cause the frame which carries the take-up mechanism to revolve in the same direction, and with the same velocity, as the needle cylinder, as specified and for the purpose set forth. Second. Combining the web-shaping plates S and C with the take-up mechanism, substantially as described, for the purpose specified."

[Reissue to Tompkins and Johnson: "We claim the apparatus for revolving the take-up machinery in unison with the needle cylinder, as herein specified, substantially in the manner and for the purpose set forth. We also claim revolving the shaping plates S and C by a positive motion with and at the same velocity as the take-up motion, substantially as described and for the purpose specified."] [2]

George Gifford, for complainant.
Charles M. Keller, for defendants.

SHIPMAN, District Judge. [The bill, in this case, is founded upon two patents, alleged to be for new and useful improvements in rotary knitting machines. The first was issued to Daniel Tainter, of Worcester, Massachusetts, November 30, 1852, and on February 12, 1860, was by him assigned to the present complainant, who is now the owner of the same. The second patent was issued to Clark Tompkins, the present complainant, and John Johnson, of Troy, New York, September 18, 1855, and surrendered and reissued to them May 15, 1860. On the 18th of the last named month, Johnson assigned his interest therein to the complainant, who is now the sole owner.] [3]

The inventions alleged to be covered by these patents are of great utility and value. The bill charges the defendants with infringing both of them. As it is not my purpose to go, in detail, into the discussion of the evidence upon which the questions of fact in this controversy depend, it is important to set forth, as clearly as the subject-matter will admit, my construction of the patents, in order that the grounds upon which the decision rests may distinctly appear. This is especially necessary, inasmuch as there does not appear to have been any prior litigation of the questions involved, in which any judicial construction has been put upon the patents.

And, first, as to the construction of the Tainter patent. There are, in the specification of this patent, what purport to be two distinct claims, in the construction of which the parties materially differ. The first claim, as I understand it, is for a combination consisting of three distinct parts, and limited to them. These are, the peculiar mechanism for forming the stitches, described in the specification—the draft and take-up roller revolved by mechanism on its axis—and the mechanism so connecting the draft and take-up roller with the peculiar knitting device, that the two shall rotate coincidentally, or in unison. These three distinct members, in combination, form the organized mechanism embraced in the first claim. The second claim is, in its legal aspect, not materially different from the first. It is fuller, inasmuch as it embraces, substantially, a brief description of the particular manner in which the three parts are combined and made effective in producing the intended result. I, therefore, regard the invention as being embraced in both claims, though more fully described in the second one. The attempt to separate the invention into two distinct parts has certainly failed. The same invention described in the first claim is found in the second, and no other invention is found there. In the first it is called a combination, in the second an arrangement.

The defendants insist, however, that the fact that a single invention is made the subject of two distinct claims in the same specification—in other words, is claimed twice—renders the patent void. This objection to the validity of the patent is placed

2 [From 2 Fish. Pat. Cas. 577.]

3 [From 2 Fish. Pat. Cas. 577.]

upon what is termed by counsel "duplicity of claim," and the argument really is, that, as one claim is but a repetition of the other, this repetition destroys the patent. No authority is cited in support of this objection, and no reasons presented which give it weight or strength. None is perceived by the court. It is clearly not like the case where two distinct inventions, relating to wholly distinct subjects, having no objects in common, are embraced in the same patent; and the objections which would apply in such a case have no application to a patent like the one now under consideration. The blemish must, therefore, be regarded as mere tautology, which, while it may make the instrument less clear and exact, does not impair its validity. There is no evidence that the double claim was made with an intention to mislead.

The utility of the invention is conceded, and its infringement by the defendants, under this construction of the patent, is not denied.

The only remaining question arising under this patent is, whether or not Daniel Tainter is the original and first inventor. On this point, the burden of proof is on the defendants. The patent is strengthened, in this feature, by the testimony of Clark and Sandford, and I do not think that the proofs offered by the plaintiff are overcome by the evidence adduced by the defendants. It is not enough that the latter raise a doubt on this question. They must show, by satisfactory and preponderating evidence, that they antedate the invention set forth in the patent. After a careful comparison of the whole evidence on this point, I think they have failed to show that any combination substantially like the one described in the Tainter patent existed prior to his invention.

So far as the re-issued patent to Tompkins and Johnson is concerned, the defendants are charged with infringing the second claim only. This claim, when read by itself, is simply for revolving the shaping plates by a positive motion with, and at the same velocity as, the take-up motion, substantially as described. The object of this arrangement is to secure, by the lower and circular plate, an even pull of the fabric as it comes from the circular row of needles below, keeping the threads at uniform angles, and thus securing its uniform elasticity. The upper plate is oval, so as to pass the web in a partially flattened state to the rod or cloth spreader. The only difficulty with the claim is, that it is not so full and specific as it should have been. But, when read in the light of the preceding and descriptive parts of the specification, it must be understood to embrace the connection of the moving plates with the take-up mechanism, and their operation together in the peculiar manner set forth. This is the only construction which leaves any intelligent meaning in the claim. This peculiar arrangement of the plates and take-up mechanism,

is not found in the Whitehead machine; nor is there satisfactory evidence that it existed in any other prior to the invention of Tompkins and Johnson.

As to the infringement, the only important difference between the arrangement and operation of these plates in the plaintiff's and the defendants' machines is, that, in the former, they are fixed to the rod or spindle, and are revolved by the gear which carries it, while, in the latter, the spindle to which they are attached turns freely and without gearing. This difference, in the judgment of the court, is not material, but is only a mechanical equivalent, as the arrangement is, in all other respects, nearly identical, and accomplishes the same result in essentially the same manner.

It is, however, objected by the defendants, that the specification points out no means by which this arrangement can be made to operate successfully in a machine where the spindle carrying the plates runs free, instead of being driven by gear. This point is not free from difficulty. But, on the whole, I conclude that the patentees had a right to assume that those who desired to understand all the conditions under which their invention could be operated, were acquainted with the preceding state of the art immediately connected with this particular subject-matter. A mere glance at the Tainter machine, with which all persons acquainted with this branch of business must be presumed to be familiar, and which is referred to by name in the specification, would at once show that it is immaterial, so far as the function and arrangement of these plates are concerned, whether they are carried round by force of gear applied to the spindle, or on a free spindle, by force of the web acting on the plates. Indeed, the patent itself says, that it is not essential that the plates should be immovably fastened to the spindle.

It is insisted, however, by the defendants, that this is an after-thought, inserted in the reissued patent after the patentees had seen the defendants' machines, and for the purpose of covering what was not embraced in the original patent. But the court has no means of judging of the force of this objection, as the original patent is not in evidence. As no comparison can be made between that and the reissued patent, no inference of this character can be drawn against the latter.

It follows, from these views, that an injunction must issue against the use of the invention described in the Tainter patent, and also against the use of the one described in the second claim of the Tompkins and Johnson patent.

Before dismissing this case, I deem it proper to express, in explicit terms, the disapprobation, by this court, of the loose manner in which the specifications of patents are very often drawn up. I am well aware that sometimes it may be difficult to clearly and exactly

state and describe the subject-matter of an invention. This is the case where the mechanism constituting or embodying the invention is extensive and complicated. But these difficult instances bear no adequate proportion to the cases in which specifications, and especially those parts of them which are devoted to stating the claim, are very loosely framed. Patents are constantly being reissued, for the purpose of restating the claims of the inventor, in order that the description may coincide with the invention, where the subject-matter is neither complicated nor difficult to delineate. In many cases where they are not reissued, the courts are called upon, under the rule of "liberal construction," to pass upon confused and obscure specifications, and upon claims which have very scant and imperfect relation to the more detailed descriptions in the bodies of the instruments. This loose practice is injurious to inventors, is the prolific source of litigation, and multiplies the embarrassments and labors of the courts, in their efforts to protect the fruits of inventive skill and meritorious ingenuity. If a small proportion of the acumen and ability which counsel exhaust upon the construction of patents, were originally expended by draughtsmen in framing them, the property of inventors in the products of their ingenuity would be much more secure, and its protection by the courts much more easy and certain.